IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| NOREEN JEAN RENIER,<br>       *Appellant,*<br><br>v.<br><br>JOHN MERRELL,<br>       *Appellee.* | CIVIL ACTION NO. 3:11-CV-00034<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Appellant Noreen Jean Renier ("Renier"), the debtor below, appeals from the determination of United States Bankruptcy Judge William E. Anderson that the bankruptcy court lacked jurisdiction to enter a consent order arising out of Renier's motion seeking sanctions for an alleged violation of the automatic stay. Because I concur with Judge Anderson's determination that Renier failed to state a claim under 11 U.S.C. § 362(k), I will affirm.

**I.**

  Appellant Renier makes her living as a psychic, and Appellee John Merrell ("Merrell"), is a vocal skeptic. The parties have an acrimonious 25-year litigation history, which is described in the bankruptcy court's opinion. It is sufficient for present purposes to note that in 2005, a court in Washington State ordered Renier to pay Merrell approximately $1,000 in damages, and $39,000 in attorney fees. Thus, when Renier initiated this action in bankruptcy court in 2007, Merrell entered the proceedings as a creditor.

  On January 8, 2010, Appellant filed a motion seeking sanctions for alleged violations of the automatic stay. *See* 11 U.S.C. § 362(a). The alleged violations consist of disparaging comments that Appellee made about Appellant on various internet forums, as well as the alleged

1

misappropriation, through Appellee's website "www.amindformurder.com," of copyright and trademark rights associated with Appellant's 2005 book, "A Mind for Murder."

On February 16, 2010, while the rights to "A Mind for Murder" were still part of the bankruptcy estate, Renier filed her motion for sanctions. She later filed an amended motion to address perceived deficiencies in the original filing. On February 25, 2010, before the bankruptcy court had an opportunity to evaluate the merits, the parties indicated that they had reached an agreement concerning the motion. They therefore submitted a consent order, which was entered on June 21, 2010. On July 28, 2010, Renier filed a *pro se* motion seeking enforcement of the consent order. After a hearing on the matter, the bankruptcy court denied the motion and vacated the consent order *sua sponte*, having determined that it lacked jurisdiction over the motion for sanctions.

## A.

A district court sitting in its appellate capacity over a bankruptcy court must review issues of law *de novo*. *Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters.)*, 400 F.3d 219, 224 (4th Cir. 2005). The appropriate exercise of subject matter jurisdiction is a question of law. *Hager v. Gibson*, 108 F.3d 35, 38 (4th Cir. 1997). "Federal bankruptcy courts, like the federal district courts, are courts of limited jurisdiction." *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992). Because subject matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, the parties may not consent to subject matter jurisdiction where it is improper.

Federal district courts have "original and exclusive jurisdiction of all cases under title 11," the bankruptcy code, and "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b). A district court may refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Such matters are so referred in the Western District of Virginia. Therefore, for the bankruptcy court's jurisdiction over Renier's motion to be proper, it must have been "based on the 'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

Appellant does not contest the bankruptcy court's determination that it lacked "arising in" or "related to" jurisdiction. Instead, she contends that the motion for sanctions arises under title 11. See Appellant's Br. at 8. A claim arises under title 11 "if it is a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 316 (4th Cir. 2010).

**B.**

The automatic stay provision of 11 U.S.C. § 362 prevents a pre-petition creditor from collecting debts from the debtor in bankruptcy. Its purpose is to "protect[ ] the relative position of creditors [and] to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters v. George Mason Bank,* 94 F.3d 130, 133 (4th Cir.1996) (citations omitted). Thus, it secures an orderly disposition, rather than a "chaotic and uncontrolled scramble for the debtor's assets. . . ." *United States v. Gold (In re Avis)*, 178 F.3d 718, 721 (4th Cir 1999) (quoting *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982)).

To ensure the efficacy of the automatic stay, an individual may recover damages, costs, and fees for a "willful violation" of the stay, pursuant to 11 U.S.C. § 362(k). Renier appears to contend that any motion pursuant to § 362(k) arises under the bankruptcy code. Unquestionably,

3

§ 362(k) provides "a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." 600 F.3d at 316. However, it would make little sense to conclude that a party can avail itself of the jurisdiction of the bankruptcy court merely by characterizing whatever claim it has as motion pursuant to that provision. Such a rule would render the jurisdictional requirements meaningless. I therefore concur in the bankruptcy court's assessment that for jurisdiction to be proper, the factual allegations set forth in the motion must give rise to a *prima facie* claim for relief.

The automatic stay applies to a broad, but not unlimited set of circumstances. *See* 11 U.S.C. §§ 362(a)(1)-(a)(8). Appellant first contends that her motion falls within the prohibition of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). In support of this claim, Appellant refers to the exhibits attached to her initial motion, which show what appear to be unfavorable comments posted by Appellee on various blogs or other web-based forums. She places particular emphasis on a comment in which Appellee refers to Appellant's "debts with interest now having gone beyond $50,000 and potentially with other reimbursements above $60,000." She further alleges that Appellee "willfully communicated with Appellant's . . . customers and clients . . . about her bankruptcy, her debt, her income producing, business activity, and what they should do about it through the bankruptcy Court."

Yet, without more,[1] these assertions cannot be construed to fall within the statutory language. The prohibition of § 362(a)(6) applies to "any act to collect, assess, or recover a claim against the debtor . . . ." Accepting Appellant's allegations as true, they lend little support to the

---

[1]Courts have sometimes found that a creditor's contacts with third parties can result in a violation of § 362(a)(6). In *In re Hromidko*, 302 B.R. 629 (Bankr. N.D. Iowa, 2003), the court found a willful violation of the stay where the creditor's collection agent contacted the debtor's employer and "insinuated that Debtor had and was using a credit card she got under false pretenses as a business account." But this case does not involve comparable conduct.

4

conclusion that Appellee was attempting to recover any funds, outside of the bankruptcy proceedings, from Appellant. The mere mention of the existence of a debt on a public forum is not prohibited. Nor would it make sense to conclude that exhorting action "through the bankruptcy court" is prohibited. Standing alone, such assertions do little to disturb "the relative position of creditors," or to expose the debtor to "financial pressure during the pendency of the bankruptcy proceeding." *See Winters*, 94 F.3d at 133. Thus, Appellant's allegations and evidence trigger neither the express language of § 362(a)(6), nor the concerns animating that provision.

Appellant further contends that her claim fell within § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." I note first my agreement with the Bankruptcy Judge that there are serious questions whether Renier had standing to assert such a claim.[2] Assuming, *arguendo*, that she does, I nonetheless find that she fails to state a claim under § 362(a)(3). It is "undisputed" that property of the debtor's estate includes "the debtor's intellectual property, such as interests in patents, trademarks, and copyrights." *United States v. Inslaw, Inc*, 932 F.2d 1467, 1471 (D.C. Cir. 1991). It is therefore clear that any act to "obtain possession of" or "exercise control over" the intellectual property of the estate constitutes a violation of § 362(a)(3). However, I conclude that Merrell's alleged misappropriation of intellectual property rights did not constitute an effort to "obtain" or "control" such property within the meaning of the statute.

Neither the text, nor the legislative history of the statute is helpful in divining an express definition of the terms "obtain possession" or "exercise control." However, the statutory purposes bear consideration. Congress enacted § 362(a)(3) "to prevent dismemberment of the

---

[2] As the Bankruptcy Judge noted, Renier might not be able to show damages arising out harm to the estate.

estate." H.R. Rep. No. 95-595, at 341 (1977). It determined that "[l]iquidation must proceed in an orderly fashion. Any distribution of property must be by the trustee after he has had an opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution." *Id.* This case does not implicate those concerns.

Justice Cardozo famously analogized property to a "bundle of sticks," with each stick representing some right created by law. *See* Stephen J. Safranek, *Can Science Guide Legal Argumentation? The Role of Metaphor in Constitutional Cases*, 25 Loy. U. Chi. L. J. 357, 403 (1994) (citing Benjamin N. Cardozo, The Paradoxes of Legal Science 129 (1928)). Although misappropriation of intellectual property is tantamount to pulling sticks from the bundle, it does not necessarily rise to the level of prohibited conduct under § 362(a)(3). There is no dispute that, at all relevant times, the bankruptcy estate had the right to transfer its interest in "A Mind for Murder," including its interest in any royalties, to third parties. Indeed, here the trustee sold such rights to the highest bidder, Renier.[3] Merrell's alleged malfeasance did not to call into question the estate's authority to do so, or otherwise disturb the orderly distribution of the property of the estate.

Nor is § 362(a)(3) an outright prohibition on activities that might diminish the value of property belonging to the estate. In *Kreisler v. Goldberg*, 478 F.3d 209, 214-215 (4th Cir. 2007), the court considered whether an ejectment action against the debtor's wholly-owned subsidiary, which had defaulted under a lease, violated the automatic stay. Although the ejectment would cause the debtor's interest in the subsidiary to lose value, the Fourth Circuit

---

[3] After the discharge of Appellant's petition, the bankruptcy trustee filed a notice of abandonment of certain assets of the estate, including the rights to the book. According to Appellant, "Appellee apparently determined that acquisition of that copyright could further his mission to destroy Appellant's reputation . . . and objected to the Trustee's Notice of Abandonment . . . and convinced the bankruptcy court to retain the copyright . . . ." The bankruptcy court then accepted bids for the rights, which Appellant purchased, out-bidding Appellee on March 5, 2010.

concluded that the loss was not dispositive. Because the nature of the debtor's interest in the subsidiary remained unchanged, there was no violation. 478 F.3d at 215. Likewise, while Merrell's alleged misconduct may have affected the value of "A Mind for Murder," it did not threaten the estate's interest in the book, in any relevant sense.

Finally, I am persuaded by the D.C. Circuit's reasoning in *United States v. Inslaw, Inc.* that Appellant's claim should fail. 932 F.2d 1467 (D.C. Cir. 1991). There, the debtor in bankruptcy, Inslaw, had created a software product, which it had agreed to install on certain computers for the Department of Justice. After Inslaw filed a petition for reorganization under Chapter 11, the government installed the software on certain other computers, in reliance on its understanding of its agreement with Inslaw. The bankruptcy court determined that the government had impermissibly "exercised control" over Inslaw's intellectual property rights in violation of § 362(a). But the D.C. Circuit reversed, reasoning that allowing the claim to go forward would yield absurd results:

> If the bankruptcy court's idea of the scope of "exercise of control" were correct . . . [w]henever a party against whom the bankrupt holds a cause of action (or other intangible property right) acted in accord with his view of the dispute rather than that of the debtor-in-possession or bankruptcy trustee, he would risk a determination by a bankruptcy court that he had "exercised control" over intangible rights (property) of the estate. . . .

*Inslaw*, 932 F.2d 1467, 1472-73 (quotation omitted). As this would result in an "extraordinary . . . expansion" of the scope of § 362 (a), and of the bankruptcy court's jurisdiction, the court disallowed the claim. *Id.* The same reasoning holds here. *But see In re Collecting Concepts, Inc.*, Nos. 99-60268 and 99-6003, 2000 WL 1191026 (Bankr. E.D. Va. Feb. 28, 2000) (finding willful violation of stay arising out of defendant's use of debtor's trademark).

I therefore conclude that the bankruptcy court lacked jurisdiction to rule on Renier's motion for sanctions.

7

**II.**

Appellant further contests the bankruptcy court's alternative ruling that, assuming jurisdiction were proper, Appellee would still not be entitled to relief. As resolution of the jurisdictional question disposes of the matter, I will not reach that issue.

For the foregoing reasons, the bankruptcy court's decision will be affirmed in an accompanying order.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this ___22nd___ day of July, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE